IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD R. CADMUS, JR.,                 *
                                        *
                        *Plaintiff,*    *
                                        *
v.                                      *
                                        *
                                        *   Case: 1:19−cv−03459   Jury Demand
CHECKR, INC.                            *   Assigned To : Unassigned
**Serve:** INCORP SERVICES, INC.        *   Assign. Date : 11/15/2019
        1519 YORK ROAD,                 *   Description: Pro Se Gen. Civil   (F Deck)
        LUTHERVILLE MD,  21093          *
                                        *   DEMAND FOR TRIAL BY JURY
                                        *
JOHN AND JANE DOES 1 THROUGH 10         *
                                        *
                        *Defendants.*   *
                                        *

---

## MOTION FOR JUDGMENT

---

COMES NOW, Richard R. Cadmus Jr. pro se and files this Motion for

Judgment against Checkr, Inc. as follows:

### NATURE OF THE CASE

1.  This is an action brought by an Uber driver, i.e., Richard R. Cadmus Jr. *pro

se*, to enforce the provisions of 15 U.S. Code § 1681e. Plaintiff further seeks money

damages for the various and numerous tortious conduct whereby Cadmus allegedly

sustained serious and severe injuries between March 5, 2019 and May 14, 2019.

# RECEIVED

NOV 1 5 2019

Clerk, U.S. District and
Bankruptcy Courts

*1*

PARTIES

2.      **Plaintiff Richard R. Cadmus Jr.** is an adult individual who is domiciled in Baltimore, Maryland. At all related times herein, Cadmus had an Agreement with Uber Technologies, Inc. to provide rideshare driver services.

3.      **Defendant CHECKR, INC.** (hereinafter "Checkr") is a corporation organized under the laws of the state of Delaware. Checkr's corporate office is located in the state of California and/or maintains a principle address at 1 Montgomery Street, Suite 2000, San Francisco CA 94104.

4.      At all related time herein, **Defendant JOHN AND JANE DOES 1 THROUGH 10**(hereinafter "Doe Defendants') are employees, contractors, agents, servants, workman or otherwise joint ventures' who collaborated with and/or were under the direct or general supervision of Checkr and/or Uber Technologies, Inc.

5.      Doe Defendants engaged in providing ridesharing application technology and support, background investigation research, information retrieval and report compilation for purposes of providing on-going employment background screenings to employers on behalf of Uber.  Doe

6.      Defendants performed *inter alia* the following tasks: i.) customer service support   ii.) creating and organizing data, information, documents and/or reports; iii.) retrieval and storage of data, information,  documents and/or reports; iv.) analysis of data, information, documents and/or reports; v.) authentication and verification of data, information, documents and/or reports; vi.) technical software programming and/or database programming to facilitate the creation, organization,

2

analysis, authentication/verification of data, information, documentation and/or reporting of employee background and driver history consumer reports.

7.    On information and belief, Checkr obtains driver status and driving history data directly from the Motor Vehicle Administration("MVA") for the state of Marlyand, PennDot for the Commonwealth of Pennyslvania and the Department of Motor Vehicles("DMV") for the Commonwealth of Virginia.

## GENERAL FACTS

8.    All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

9.    At all times herein, Plaintiff was a consumer defined by 15 USC 1681a et. seq.

10.    At all times mentioned herein Plaintiff was a person as defined by 15 USC 1681a (c).

11.    At all times mentioned herein Plaintiff was an individual as defined by 15 USC 1681a (c).

12.    At all times mentioned in this Complaint, Checkr maintained a "consumer file" on Plaintiff as defined by 15 USC 1681a(d) et. seq. of the FCRA, as well as 15 USC 1681g et. Seq. of the Fair Credit Reporting Act("FCRA").

13.    At all times mentioned in this Complaint, Checkr and Doe Defendants were "person(s)" as defined by 15 U.S.C 168la(f) et. seq.

14.    Checkr is a consumer reporting agency("CRA"), who, in turn sells background investigation information including an employee's criminal history and driver's license status and driving history to employers.

3

15.     Defendant Checkr sold numerous and various background report(s) to Plaintiff's employer, Uber Technologies, Inc.("Uber") regarding the background of Richard R. Cadmus Jr.

16.     Like numerous other employers, Uber uses consumer reports that include public records received from Defendant Checkr to make decisions about continued employment.

17.     Checkr maintains a national database of driver's license status and driving history data about prospective ride-share transportation services providers such as applicable personal data about Plaintiff Cadmus.

18.     Defendant's database of driver's status and driver's history reports related to Richard R. Cadmus Jr. erroneously stated his driver's license was surrendered in the Commonwealth of Virginia (regardless that Cadmus was actively licensed in the state of Maryland) and therefore, Plaintiff's consumer report implicitly indicated Plaintiff was not authorized to drive a motor vehicle.

19.     Plaintiff brings this claim based on that inaccuracy whereas 15 U.S.C. 1681e(b) requires CRA's to follow reasonable procedures to ensure maximum possible accuracy of its reports.

20.     Defendant Checkr  failed to review, analyze and consult with i.)  its own previously stored driver's license data reporting maintained about Plaintiff; with ii.) Uber regarding the state Mr. Cadmus was making application to operate as an uber driver in; and with iii.)  Plaintiff; which all contributed to Checkr's reporting error to Cadmus' consumer report.

4

**RIDE-SHARING FACTS**

21.     Ride sharing is defined as individuals participating in an arrangement in which a passenger travels in a private vehicle driven by its owner, for free or for a fee, especially as arranged by means of a website or app.

22.     At all related times, Plaintiff engaged in the ride-sharing transportation services as a vehicle owner-driver.

23.     At all related times, Plaintiff contractually utilized and relied on the technology services of Uber Technologies, Inc. (hereinafter "Uber") for rider lead generation, global position system mapping services, navigation, communications, payment services, manifests, waybill, tips, taxes and other reporting tools etc.

24.     Plaintiff has been exclusively operating as a rider-share transportation services provider as an Uber "Partner" Driver since September of 2016.

25.     Plaintiff has completed over 7,200 trip requests while utilizing the Uber Driver App.

26.     Plaintiff engages in the ride-share transportation services via the Driver App for approximately 50-70 Hours per week.

27.     Plaintiff average income after direct expenses is $223.00 per day.

**FACTS ABOUT CHECKR'S CONSUMER REPORT**

28.     On March 5, 2019, Checkr emailed Plaintiff a copy of his consumer disclosure report.

29.     Among other things, the disclosure contained driver status information which explicitly stated: LICENSE STATUS: SURRENDER. Exhibit A.

30. However, at all related times herein, Plaintiff possessed a valid Maryland driver's license and not a current Virginia driver's license.

31. The Public Services Commission("PSC") for the state of Maryland enforces a state regulatory requirement for Transportation Network Companies such as Uber to review and maintain current and accurate driver's license status and driver history information about ride-share transportation service providers.

32. The State of Maryland instituted this regulatory requirement to ensure the public safety, health and welfare.

33. Attached herein is the current driver screening standards applicable for ride-share transportation service providers ratified and published by the PSC. Exhibit B.

34. At all times relevant hereto, Plaintiff met the requirements of the driver screening standards as ratified and published by the PSC.

35. Checkr compiled, analyzed, stored and distributed personal information related to Plaintiff's driver's license status and history; and personal characteristics used by Checkr to Uber for the purpose of screening and oversight.

36. The PSC obtained Plaintiff's background investigation which included his driver's license status, driving history and criminal background investigation from Uber Technologies, Inc.

37. The PSC possesses oversight discretionary authority from the state of Maryland to determine whether Plaintiff's contract employment (i.e., rideshare Transportation Service Provider for Uber) should at all relevant times remain in good standing.

38.     On March 6, 2019 at 11:00 AM, Plaintiff was engaged in Transportation Services and operating his rideshare vehicle in-transit with a Uber rider in the back seat of his vehicle.

39.     Suddenly his Driver App shut down and would not provide further GPS navigation data.

40.     Plaintiff was forced to utilize a 3rd-party navigation tool, (i.e., google maps) to provide further destination navigation services for purposes of completing the trip.

41.     Plaintiff attempted to reach Uber Support Team over the phone but his calls appeared to be blocked and would not go connect or "ring" to a customer service representative.

42.     Next, Plaintiff traveled to the Uber Greenlight Hub in Fells Point located in Baltimore, MD.

43.     Plaintiff sought assistance from Uber personnel to turn his Driver App back on. Uber employees were unable to determine why Plaintiff's Driver App had been abruptly deactivated but pointed Plaintiff to the "License Status: Surrender" language in the consumer report.

44.     The driver's license status information reported by Checkr was demonstrably false and disparaging.

45.     At all related times herein, Plaintiff's privilege to drive was in good standing and/or "eligible to driver" in Maryland, Pennsylvania, Nevada and Virginia.

46.     On March 6, 2019 at 12:53PM, Uber sent Plaintiff an email from no reply@checkr.com which stated:

7

Wed 06 Mar 2019

**Personal & Confidential**
Dear Richard Randall Cadmus jr:

Enclosed please find a copy of the consumer report that we ordered from Checkr, Inc. with your authorization, in connection with your proposal to enter an independent contractor relationship. Also please find enclosed a summary of your rights under applicable law. Checkr, Inc. is located at One Montgomery Street, Suite 2000, San Francisco, CA 94104 and can be reached at 844-533-0807 or https://checkr.com/applicant.

Please carefully review the consumer report. We will be completing our review of your proposal to enter an independent contractor relationship request within the next few days and, based in whole or in part on the information in the report, may decide not to accept your proposal. The specific records that may disqualify you from entering an independent contractor relationship with the Company are:

- License Status: SURRENDER

If you believe that any of the information in the consumer report is inaccurate or incomplete, please contact Checkr, Inc. within seven business days of receiving this letter.

If you reside or submitted a proposal to enter an independent contractor relationship with the Company in Massachusetts, please also note the following enclosures: (i) a copy of the Company's Massachusetts Criminal Record Information Policy; (ii) the sources of any criminal history records provided to the Company (as reflected in the consumer report); and (iii) information from the Massachusetts Department of Criminal Justice Information Services ("DCJIS") concerning the process for correcting a criminal record.

If you reside or submitted a proposal to enter an independent contractor relationship with the Company in New York, please also note the following enclosure: a copy of Article 23-A of the New York Correction Law.

- You have the right to seek correction of any incorrect information contained in the consumer report pursuant to the regulations and procedures established by the New York State Division of Criminal Justice Services. Please email article23-a@uber.com within 7 days.
- You can also use this email address to provide us with information about your rehabilitation efforts, good conduct, or both.  Please do so within 7 days.

8

If we do not hear from you within that time, we will make our determination based on the information currently available to us.

In the event that we choose not to enter into an independent contractor relationship, Checkr, Inc. will provide you such notice. Exhibit B.

## COUNT ONE
## VIOLATION OF FAIR CREDIT REPORTING ACT (FRCA) AND FAIR AND ACCURATE CREDIT TRANSACTION ACT (FACTA), 15 U.S.C. 1681e
### Failure to Maintain Accuracy in Plaintiff's Consumer File
*Against Checkr*

47.     All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

48.     Prior to the commencement of this action, Chekr through Doe Defendants sent copies of a purported consumer report to Plaintiff via email on March 5, 2019 and again on March 18, 2019.

49.     On March 5, 2019 at 7:10PM, Defendants sent Plaintiff an email stating his background check was complete. The email contained a copy of Plaintiff's fourth background investigation between December 2018 and March 5, 2018 which concluded Plaintiff's driver's license was "surrendered". Exhibit A.

50.     Defendant forwarded the background investigation result to Uber.

51.     Defendant's background investigation information about Plaintiff was demonstrably false and disparaging.

52.     At all related times herein, Plaintiff's privilege to drive was in good standing or "eligible to drive" in each applicable state including Maryland, Pennsylvania, Nevada and Virginia.

53.     Based on the false and disparaging information supra, Uber Technologies, Inc. took immediate adverse action against Plaintiff by deactivating Cadmus' access to the Uber Driver App.

9

54.     Plaintiff was not afforded any notice or a reasonable opportunity to timely correct the erroneous information prior to the course of action taken against him.

55.     The above referenced information was inaccurate and adverse as referred to by 15 USC 1681g of the FCRA.

56.     Plaintiff's Uber Driver App remained suspended and deactivated between March 5, 2019 and May 14, 2019 (i.e., 70 days).

57.     WHEREFORE PREMISES CONSIDERED, Plaintiff moves this Court for judgment against Checkr and Doe Defendants, jointly and severally, in the amount of ONE THOUSAND ($1,000.00) DOLLARS in statutory damages, together with actual damages of FORTY NINE THOUSAND NINE HUNDRED ($49,500.00) DOLLARS in actual and compensatory damages, as well as costs expended, interest and any additional relief this Court may deem proper and just.

### COUNT TWO
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
*Against Checkr and Doe Defendants*

58.     All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

59.     Plaintiff is a full-time rideshare driver who utilizes the Uber Driver App as his primary means of financial income.

60.     Prior to being suspended for (70) days from the Uber DriverApp, Plaintiff actively utilized and relied on the platform to receive transportation requests between 50 and 70 hours per week.

61. As such, a Technology Services Agreement (i.e., the "Agreement") exists between Plaintiff, Uber Technologies, Inc. and Raiser LLC (a subsidiary of Uber Technologies, LLC). Exhibit D.

62. Checkr and Doe Defendants had affirmative knowledge of Plaintiff's contractual agreement with Uber.

63. Plaintiff's Uber profile and driver status has remained active and in good standing since August of 2016.

64. Checkr and Doe Defendants caused disparaging and injurious falsehoods regarding Plaintiff's driver status to be memorialized and distributed to Uber and others.

65. To Plaintiff's detriment, Uber relied on the information provided within the consumer report to deactivate Plaintiff's Driver App.

66. As a result, Defendants' conduct made it impossible to perform and/or comply with the Agreement between Plaintiff and Uber.

67. Checkr's conduct was willful, wanton and reckless.

68. Checkr's conduct caused Uber to ultimately the breach the Agreement with Plaintiff.

69. Plaintiff was deactivated and essentially barred from receiving trip requests on the Uber Driver App for 70 days.

70. Plaintiff is not able to enjoy the benefits of ride-share lead generation among other things within the Uber Driver App. He is unable to generate income and unable to pay his normal living expenses as direct and foreseeable consequence.

71. Checkr's and Doe Defendants' conduct was not only intentional but independently wrongful and/or unlawful because Defendants' knew or should have known Plaintiff's driver's license status was in good standing prior to sending the consumer report to Uber.

72. Checkr and Doe Defendants are in violation of Title 15 U.S. Code Subchapter III – Credit Reporting Agencies("CRA") among other things.

73. WHEREFORE PREMISES CONSIDERED, Plaintiff moves this Court for judgment against Checkr and Doe Defendants, jointly and severally, in the amount of ONE MILLION ($1,000,000.00) DOLLARS in actual and compensatory damages, together with costs expended, interest and any additional relief this Court may deem proper and just.

### COUNT THREE
### DEFAMATION
*Against Checkr and Doe Defendants*

74. All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

75. Checkr and Doe Defendants made false, defamatory and libelous statements by publication inside Plaintiff's consumer report by stating **License Status: SURRENDER** on March 5, 2019. Exhibit A.

76. Checkr failed and refused to verify, authenticate or corroborate the erroneous information prior to Doe Defendants employed by Checkr forwarding the consumer report to Uber.

77. Checkr's false, defamatory and libelous statement is the direct and proximate cause of Plaintiff's injuries.

12

78.     Alternatively, Defendant's published statements that essentially accused Plaintiff of driving without a license imputed a crime upon Cadmus. As such, Checkr has committed defamation per se.

79.     Plaintiff has suffered serious harm from being banned by from the Uber Driver App.

80.     Being classified and labeled by Defendants' as unlicensed has exposed Plaintiff to constructive scorn, hatred, contempt and ridicule by Uber and the PSC.

81.     Uber has been discouraged from having a good opinion of, or association with Plaintiff due to the subject of the libelous statement published by Checkr.

82.     WHEREFORE PREMISES CONSIDERED, Plaintiff moves this Court for judgment against Checkr and Doe Defendants, jointly and severally, in the amount of ONE MILLION ($1,000,000.00) DOLLARS in compensatory damages, together with costs expended, interest and any additional relief this Court may deem proper and just.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*Against Checkr and Doe Defendants*

83.     All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

84.     Chekr's published statements were made with reckless disregard and done with malicious intent.

85.     Chekr's demonstrated acts and omissions were outrageous and extreme.

86.     Plaintiff recently relocated to Baltimore, Md. and purchased a new home in December of 2018.

87.     Plaintiff relied substantially on his ride-share income generated from the previous two (2.5) years to qualify for his new home mortgage.

88.     Plaintiff had no reason to suspect or believe Uber would be induced into breaching the Agreement and essentially deactivate Plaintiff's Driver App two months after he purchased a new home and relocated to the City of Baltimore, Md.

89.     Plaintiff has no other source of financial income.

90.     Not knowing how the next mortgage payment will be made (as a first-time home buyer purchase); as well, how Plaintiff will pay for his living expenses, has caused Plaintiff serious and sever emotional distress that would shock the conscious of a reasonable man.

91.     Plaintiff has incurred migraine headaches, ringing in his ears, seriously high and debilitating blood pressure, hypertension, night sweats as well as difficulty breathing and has suffered four anxiety attacks (believing he was choking and unable to breath) since March 6, 2019.

92.     Plaintiff has also collapsed and fainted twice since Uber deactivated his Driver App.

93.     Plaintiff has been and continues to be in a state of panic and despair related to his loss of income since Uber deactivated his Driver App.

94.      Plaintiff also suffers from a debilitating physical condition dating back twenty (20) years for which he takes medication which materially affects his energy, stamina and ability to perform strenuous physical tasks creating a bar to finding alternative employment.

95.      In the alternative, Plaintiff makes a claim for NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS against Checkr.

96.      WHEREFORE PREMISES CONSIDERED, Plaintiff moves this Court for judgment against Checkr and Doe Defendants, jointly and severally, in the amount of ONE MILLION ($1,000,000.00) DOLLARS in compensatory damages, together with costs expended, interest and any additional relief this Court may deem proper and just.

## COUNT FIVE
## NEGLIGENT HIRE AND/OR SUPERVISION
*Against Checkr*

97.      At all times material to this Complaint, Checkr hired John and Jane Does 1 through 10 to act for its financial benefit and Doe Defendants were subject to the direction and control of Checkr.

98.      As such, Checkr owed Plaintiff and members of the public at large [a duty] to take reasonable measures, both at the time it hired the Doe Defendants and throughout its employment of Doe Defendants, to ensure each conducted himself/herself in [a] lawful, compliant and prudent manner while engaging in the research, generation, analysis and storage of background and driver's license history investigation reports ("Consumer Reports').

15

99. Those duties include, but are not limited to, Checkr's duty to make sure Doe Defendants had i.) the proper professional background and experience in conducting criminal and driver history background investigation and analysis; and ii.) provide adequate training, supervision and seek those sufficiently experienced software/database programming where it relates to accurately generating, reporting, analyzing and verifying the background investigation data and information among other things.

100. On or about March 5, 2019, Checkr breached its duties of care owed to Plaintiff by employing Doe Defendants, who were not properly trained and experienced in conducting criminal and driver's license status/history background investigations when Doe Defendants forwarded their Consumer Report to Uber Technologies, Inc. *vis-à-vis* Plaintiff purportedly not having a current and valid driver's license in the jurisdiction where he had recently relocated to live and work.

101. As such, Checkr breached the duties of care it owed to Plaintiff by not providing adequate supervision and oversight to ensure proper steps were being utilized to ensure the veracity of the information researched, compiled, analyzed, stored and forwarded to the other and/or to Uber Technologies and the PSC.

102. As a direct and proximate result of Checkr's breach of the duties of care owed to Plaintiff, he has and continues to sustain substantial and serious injuries and damages including but not limited to emotional, physical and financial pain and suffering.

103. WHEREFORE PREMISES CONSIDERED, Plaintiff move this Court for judgment against Checkr in the amount of ONE MILLION ($1,000,000.00)

DOLLARS in compensatory damages, together with costs expended, interest and any additional relief this Court may deem proper and just

## JURISDICTION

104.     The previous paragraphs of this Complaint are incorporated by reference.

105.     At all times relevant herein, Plaintiff Cadmus timely opted out of arbitration with Uber Technologies, Inc.

106.     The Court has jurisdiction under FCRA, 15 U.S.C. 1681p, and 28 U.S.C 1331 and 1332. Venue is proper in this Court under 28 U.S.C. 1391(b) as Defendant regularly conducts business in the district and division. Plaintiff resides in this District. Significant third-party evidence and witness testimony is located here. Further, because Checkr regularly conducts business in the state of Maryland, the company has availed itself to the market forces and laws and regulations codified within this state.

107.     This Court has Federal question jurisdiction pursuant to 28 USC 1331-1337 et seq. and 15 USC 1681 et. seq.

108.     Diversity of Citizenship exists between Plaintiff and Defendant because they are both domiciled in different states and the amount in controversy is over SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS.

109.     At all times herein, Plaintiff regularly received and was authorized to receive Uber requests (i.e., "pings" for passenger pickup) within the District of Columbia, Maryland and Virginia ("DMV") area.

110.     At all times herein, Checkr, Uber and Doe Defendants regularly

Case 1:19-cv-03459-RC   Document 1   Filed 11/15/19   Page 18 of 22

conduct business within Washington D.C. (i.e., District of Columbia), Maryland and Virginia. As such, Checkr and Uber consent to be subject to defend litigation within the jurisdictional boundaries and filing an action within the DMV will not violate due process and/or offend the notions of fair play and substantial justice.

## LIABILITY AND DAMAGES

111.    All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

112.    Defendant is liable for the acts committed by its agents, employees and representatives under the doctrine of respondeat superior because Defendants' such persons were acting within the scope of their employment with Checkr.

113.    In the alternative, Defendant is liable for the conduct of its agents / employees and representatives under the theory of joint and several liability because Defendant and its agents/ employees were engaged in a joint venture and were acting jointly and in concert.

114.    Any mistake made by Defendants would have included a mistake of law.

115.    Any mistake made by Defendants would not have been a reasonable or bona fide mistake.

116.    Plaintiff believes and avers Defendant's conduct was willful for reasons including but not limited to prior knowledge of Plaintiff's driver's license status by Checkr.

117.    Nevertheless, Defendants included superfluous information which implicitly indicated Plaintiff's privilege to drive a car was not in good standing for purposes of providing Uber transports.

118.    Plaintiff is entitled to ONE THOUSAND ($1,000.00) DOLLARS statutory damages in this case pursuant to 15 USC 1681n et. seq. because Defendant(s)' acts and omissions were willful. In the alternative, Plaintiff requests such other amount as this Honorable court deems just and proper.

119.    Plaintiff is entitled to at least ONE MILLION ($1,000,000.00) DOLLARS in non-economic compensatory damages.

120.    Because Defendant(s)' conduct was ·willful, wanton and reckless, Plaintiff requests punitive damages in an amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS. In the alternative, Plaintiff requests such other amount determined by a jury.

121.    Plaintiff suffered and continues to suffer from serious and sever agony, frustration, aggravation, embarrassment, hopeless despair and serious and sever emotional distress as a result of the acts and omissions described in this Complaint.

122.    For purposes of a default judgment, Plaintiff believes and avers that such agony, frustration, aggravation and embarrassment has a value of no less than ONE HUNDRED FORTY THOUSAND ($140,000.00) DOLLARS.

## OTHER RELIEF

123.    All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

124.    Plaintiff requests a jury trial in this matter.

125.    Plaintiff seeks reasonable attorney's fees and costs.

126.    Plaintiff seeks such other relief as this Honorable Court may deem just and proper.

127.    Plaintiff reserves to amend as a matter of course and to add additional party-defendants; and state law/constitutional claims against Checkr and Doe Defendants among potential others.

WHEREFORE, Plaintiff demands judgment against Checkr and Doe Defendants, jointly and severally, in the amount of no less than FOUR MILLION FOURTY-NINE THOUSAND ($4,049,500.00) DOLLARS as enumerated below, or other amount determined by this Honorable Court.

> $49,500.00 actual and statutory damages for Count One
> $1,000,000.00 actual damages for Count Two
> $1,000,000.00 actual damages for Count Three
> $1,000,000.00 actual damages for Count Four
> $1,000,000.00 actual damages for Count Five
> $500,000.00 punitive damages

### Total: $4,049,500.00

Plaintiff further seeks such additional relief as the Court deems just and proper.

RICHARD R. CADMUS JR.

By: _____
            Pro Se

Richard R. Cadmus Jr.
1258 James Street
Baltimore, MD 21223
(540)395-3539
randcadmus@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD R. CADMUS, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| CHECKR, INC. | * | Civil Action No.: _____ |
| | * | |
| JOHN AND JANE DOES 1 THROUGH 10 | * | |
| | * | |
| Defendants. | * | |
| | * | |

## ORDER

AND NOW, this _____th day of November, 2019, upon consideration of Plaintiff's

"Motion For CM/ECF Filing Access, it is hereby ORDERED that Plaintiff's motion is

GRANTED.

Plaintiff is hereby directed to follow the Court's Tutorial for "Registering for E-

filing for the U.S. District Court for the District of Columbia via Pacer" located on the

Court's website.

This cause continues.

BY THE COURT

_____
District Court Judge

From: **Richard R. Cadmus Jr.**
1258 James Street
Baltimore, Maryland 21223

To: **Clerk of the Court**
US District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington D.C. 20001



7019 0700 0000 2675 6417



1000

20001

U.S. POSTAGE PAID
FCM LG ENV
BALTIMORE, MD
21223
NOV 13, '19
AMOUNT

**$6.15**

R2305M144667-11