IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD R. CADMUS, JR.,                    *
                                           *
                           *Plaintiff*,    *
                                           *
*v.*                                       *
                                           *
                                           *
CHECKR, INC.                               *
**Serve:** INCORP SERVICES, INC.           *
           1519 YORK ROAD,                 *
           LUTHERVILLE MD, 21093           *
                                           *
                                           *
JOHN AND JANE DOES 1 THROUGH 10            *
                                           *
                           *Defendants*.   *
                                           *

# 19-cv-03459

DEMAND FOR TRIAL BY JURY

---

## AMENDED COMPLAINT

---

COMES NOW, Richard R. Cadmus Jr. pro se and files this Amended Complaint pursuant to the Court's Order dated January 28, 2020 (ECF No. 6) and states the following in support:

### NATURE OF THE CASE

1.     This is an action brought by Richard R. Cadmus Jr. *pro se*, to enforce the provisions of 15 U.S. Code § 1681 and which also alleges other various torts associated with generating, publishing and disseminating intentionally erroneous driver's license information to Plaintiff's business partner - Uber Technologies, Inc.

JURISDICTION AND VENUE

2.     The Court has jurisdiction under FCRA, 15 U.S.C. 1681p, and 28 U.S.C 1331 and 1332.  Venue is proper in this Court under 28 U.S.C. 1391(b) as Defendant regularly conducts business in the district and division. Plaintiff resides in this Maryland but conducts a significant portion of his ridesharing business within the geographical boundaries of the District of Columbia.  Significant third-party evidence and witness testimony is also located in Washington D.C.

3.     This Court has Federal question jurisdiction pursuant to 28 USC 1331-1337 et seq. and 15 USC 1681 et. seq.

4.     Diversity of Citizenship exists between Plaintiff and Defendant because Plaintiff's domicile address is in the state of Maryland and Defendants principle place of business is in San Francisco, CA.  Hence, this Court has subject matter jurisdiction because both are domiciled in different states and the amount in controversy is over SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS pursuant to 28 U.S.C. 1332.

5.     At all times herein, Plaintiff was authorized to provide rideshare services in the District of Columbia.  He further regularly received and was authorized to receive Uber requests (i.e., "pings" for passenger pickup) in the District of Columbia, Maryland and Virginia ("DMV") also. See Exhibit "E"

6.·     Cadmus was located in the District of Columbia("D.C.") providing rideshare services at the time of his initial injury - i.e., when the  App was shut off. Plaintiff was banned from the ridesharing platform on or around March 6, 2019. *Id.*

7.     At all times herein, Checkr, Inc. regularly conduct business within

2

Washington D.C. (i.e., District of Columbia), Maryland and Virginia. As such, Defendant consents to be subject to defend litigation within the jurisdictional boundaries and filing an action within the DMV will not violate due process and/or offend the notions of fair play and substantial justice. Id.

PARTIES

8.      Plaintiff RICHARD R. CADMUS JR. is an adult individual who is domiciled in Baltimore, Maryland and for purposes of this lawsuit is known as an "uber driver".

9.      Defendant CHECKR, INC. (hereinafter "Checkr") is a corporation organized under the laws of the state of Delaware. Checkr's corporate office is located in the state of California and/or maintains a principle address at 1 Montgomery Street, Suite 2000, San Francisco CA 94104.

10.      At all related time herein, Defendant JOHN AND JANE DOES 1 THROUGH 10(hereinafter "Doe Defendants') are employees, contractors, agents, servants, workman or otherwise joint ventures' who collaborated with and/or were under the direct or general supervision of Checkr and/or Uber Technologies, Inc.

11.      Doe Defendants engaged in providing ridesharing application technology and support, background investigation research, information retrieval and report compilation for purposes of providing on-going employment background screenings to employers on behalf of Uber. Doe

12.      Defendants performed *inter alia* the following tasks: i.) customer service support ii.) creating and organizing data, information, documents and/or reports; iii.) retrieval and storage of data, information, documents and/or reports; iv.)

3

analysis of data, information, documents and/or reports; v.) authentication and verification of data, information, documents and/or reports; vi.) technical software programming and/or database programming to facilitate the creation, organization, analysis, authentication/verification of data, information, documentation and/or reporting of employee background and driver history consumer reports.

13.     On information and belief, Checkr obtains driver status and driving history data directly from the Motor Vehicle Administration("MVA") for the state of Maryland, PennDot for the Commonwealth of Pennyslvania and the Department of Motor Vehicles("DMV"), for the Commonwealth of Virginia  as well as for the District of Columbia("DC DMV")

14.     At all relevant times herein, Doe Defendants were working under the course and scope of their employment at Checkr, Inc. Hence, Checkr, Inc. is being sued for the conduct of their employes, agents and workman *infra* under the theory of respondaet superior.

## GENERAL FACTS

15.     All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

16.     At all times herein, Plaintiff was a consumer defined by 15 USC 1681a et. seq.

17.     At all times mentioned herein Plaintiff was a person as defined by 15 USC 1681a (c).

18.     At all times mentioned herein Plaintiff was an individual as defined by 15 USC 1681a (c).

19.     At all times mentioned in this Complaint, Checkr maintained a "consumer file" on Plaintiff as defined by 15 USC 1681a(d) et. seq. of the FCRA, as well as 15 USC 1681g et. Seq. of the Fair Credit Reporting Act("FCRA").

20.     At all times mentioned in this Complaint, Checkr and Doe Defendants were "person(s)" as defined by 15 U.S.C 168la(f) et. seq.

21.     Checkr is a consumer reporting agency("CRA"), who, in turn sells background investigation information including citizens' criminal history and driver's license status and driving history to potential contractors and/or employers.

22.     Defendant Checkr sold numerous and various background report(s) to Plaintiff's employer, Uber Technologies, Inc.("Uber") regarding criminal and driver related background investigations of  Richard R. Cadmus Jr.

23.     Like numerous other employers, Uber uses consumer reports that include public records received from Defendant Checkr to make decisions about granting access and/or banning access to their Uber Ride-Share App.

24.     Checkr maintains a national database of driver's license status and driving history data about prospective ride-share transportation services providers such as applicable personal data about Plaintiff Cadmus.

25.     Defendant's database maintained information that indicated Richard R. Cadmus Jr.'s ability to driver a vehicle in the Commonwealth of Virginia was not in good standing and "surrendered".

26.     Plaintiff brings this claim based on these inaccuracies; whereas 15 U.S.C. 1681 requires CRA's to follow reasonable procedures to ensure maximum possible accuracy of its reports.

27.     Defendant Checkr failed to compile, review, analyze and verify i.) its own recent and previous stored driver's license data generated, maintained and reported about Plaintiff; ii.) Uber's data regarding the state which application was being made to engage in ride-share services; and iii.) the National Driver Registry or other central driver's license status database or registry

28.     All of which contributed to Checkr reporting intentional and erroneous driver's license status information on Cadmus' consumer report.

## RIDE-SHARING FACTS

29.     Ride sharing is defined as individuals participating in an arrangement in which a passenger travels in a private vehicle driven by its owner, for free or for a fee, especially as arranged by means of a website or app.

30.     At all related times, Plaintiff engaged in the ride-sharing transportation services within that state of Maryland, the District of Columbia and Virginia as a vehicle owner-driver.

31.     At all related times, Plaintiff contractually utilized and relied on the technology services of Uber Technologies, Inc. (hereinafter "Uber") for rider lead generation, global position system mapping services, navigation, communications, payment services, manifests, waybill, tips, taxes and other reporting tools etc.

32.     Plaintiff has been exclusively operating as a rider-share transportation services provider for Uber as a "Partner" driver since September of 2016.

33.     Plaintiff utilizes a driver-app to accept requests for transportation from Uber riders approximately 50-80 Hours per week and to date has completed over 8,200+ trip requests.

6

34.     Plaintiff's revenue generated from the driver-app (before expenses) is approximately $223.00 per day.

## FACTS ABOUT CHECKR'S CONSUMER REPORT

35.     The Public Services Commission("PSC") for the state of Maryland enforces a state regulatory requirement for Transportation Network Companies such as Uber to review and maintain current and accurate driver's license status and driver history information about ride-share transportation service providers.

36.     The State of Maryland instituted this regulatory requirement to ensure the public safety, health and welfare.

37.     Attached herein is the current driver screening standards applicable for ride-share transportation service providers ratified and published by the PSC. See Exhibit "B".

38.     At all times, Plaintiff has been in compliance with the requirements of the driver screening standards ratified and published by the PSC.

39.     Checkr compiled, analyzed, stored and distributed personal information related to Plaintiff's driver's license status and history; and personal characteristics used by Checkr to Uber and the PSC for the purpose of screening and oversight.

40.     The PSC obtained Plaintiff's background investigation which included his driver's license status, driving history and criminal background investigation from Uber.

41.     The PSC possesses oversight discretionary authority from the state of Maryland to determine whether Plaintiff's contract employment (i.e., rideshare

7

Transportation Service Provider for Uber) should at all relevant times remain in good standing.

## MARCH 6, 2019 INCIDENT

42.     On November 26, 2018, Cadmus relocated to Baltimore Md from Philadelphia, PA. As such, he  put in a request to Uber to  change his driver profile from the Pennsylvania rideshare market to the Maryland/DC/Virginia rideshare market.

43.     This request triggered a background investigations to be automatically commenced by Checkr, Inc. in December of 2018.

44.     Within two (2) weeks, Cadmus' background check was completed and he was permitted to accept trip requests in Maryland, DC and Virginia.

45.     On December 31, 2018, Cadmus began providing ride-share transportation services via his Uber driver-app.

46.     In late February of 2019, Cadmus noticed Checkr began arbitrarily conducting another background investigation on him because he received email notifications of the event.   Cadmus continued to provide  uninterrupted ride-share services while Checkr purportedly conducted the second background investigation in two month on Cadmus.

47.     On March 5, 2019 at 7:10 p.m., Cadmus received a copy of his consumer disclosure report via email from Checkr.

48.     The disclosure contained driver status information which explicitly stated: LICENSE STATUS: SURRENDER. Exhibit "A".

49.     On March 6, 2019 at 12:53 p.m., Checkr sent Cadmus a pre adverse action notification email via checkr.com domain which purported to be sent from Uber Technologies, Inc.   See Exhibit "C"

50.     On March 6, 2019 at approximately 3:00 p.m., Cadmus was conducting ride-share services in the District of Columbia in-route with a Uber rider-customer in the back seat of his vehicle.

51.     Suddenly, his Driver App shut down and would not provide further GPS navigation data and he could not log back into the driver-app.

52.     Plaintiff was forced to use Google Mapps (i.e., google maps) to navigate the Uber rider to her destination.

53.     Plaintiff attempted to reach Uber support over the phone but his calls appeared to be blocked and would not go connect or "ring" to a customer service representative.

54.     Plaintiff was forced to leave his location in D.C. and travel to the Uber Greenlight Hub in Baltimore, MD where he sought assistance from Uber personnel to turn his driver-app back on.  Uber employees were unable to determine why Plaintiff's driver-app was abruptly deactivated but pointed Plaintiff to the "License Status: Surrender" language in his driver profile screen they pulled up on their computers.

55.     At all times, Plaintiff's privilege to drive was in good standing and/or "eligible to driver" in Maryland, D.C. and Virginia among states throughout this country.

56.     On March 6, 2019 at 12:53PM, Uber sent Plaintiff an email from noreply@checkr.com which stated:

9

Wed 06 Mar 2019

**Personal & Confidential**
Dear Richard Randall Cadmus jr:

Enclosed please find a copy of the consumer report that we ordered from Checkr, Inc. with your authorization, in connection with your proposal to enter an independent contractor relationship. Also please find enclosed a summary of your rights under applicable law. Checkr, Inc. is located at One Montgomery Street, Suite 2000, San Francisco, CA 94104 and can be reached at 844-533-0807 or https://checkr.com/applicant.

Please carefully review the consumer report. We will be completing our review of your proposal to enter an independent contractor relationship request within the next few days and, based in whole or in part on the information in the report, may decide not to accept your proposal. The specific records that may disqualify you from entering an independent contractor relationship with the Company are:

- License Status: SURRENDER

**COUNT ONE**
**VIOLATION OF FAIR CREDIT REPORTING ACT (FRCA) AND FAIR AND ACCURATE CREDIT TRANSACTION ACT (FACTA), 15 U.S.C. 1681**
**Failure to Maintain Accuracy in Plaintiff's Consumer File**
*Against Checkr*

57.    All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

58.    15 U.S.C 1681k states "A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—

**(2)**    maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

10

59.     15 U.S.C 1681n states "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of (1)(A) any actual damages sustained by the consumer as a result of the failure...."

60.     Despite the fact that Defendants successfully conducted a background investigation report on Plaintiff when he initially located to Maryland in December of 2018:

a. Defendants willfully failed to strictly maintain a process and method that would accurately verify Plaintiff's domicile address and the state and status of his current driver's license.

b. Defendants failed to strictly maintain processes and methods to store, compare and analysis driver's license state and status information sent to them by Uber and other sources such as the National Driver Registry which would have confirmed Cadmus held a current driver's license in the state of Maryland.

c. Defendants failed to strictly maintain a process and methods to compare Plaintiff's current domicile state of residency with the retrieved driver's license information and the states DMV information.

d. Defendants failed to strictly maintain a process that would check other state driver's license databases in the event a consumer's driver's license came back surrendered in another state. (all driver's licenses are deemed surrendered[1] once a citizen becomes licensed in another state)

e. Defendants failed to strictly maintain a process that would verify and compare driver's license information such as the domicile state of the consumer with the Uber driver profile information prior to disseminating adverse reporting data to Uber Technologies, Inc.

---

[1]     By operation of state law, no citizen can hold current driver's licenses in two states simultaneously.

61.     By virtue of Defendants previous background investigation conducted a month prior where Checkr correctly reported Cadmus was domiciled and licensed in the state of Maryland, Defendants knew or should have known Plaintiff was domiciled in Maryland and that he possessed a Maryland driver's license during the second (2nd) background investigation and that his license status of SURRENDER was erroneous.

62.     As such, Defendants willfully failed to maintain strict procedures designed to comply with the requirements of Section 1681k. Therefore, false and disparaging information was compiled, stored, published  and disseminated to Uber and others by Checkr, Inc. about Plaintiff.

63.     As such, Defendants public record information reported to Uber about Plaintiff was not accurate, complete or up-to-date.

64.     Uber took immediate adverse action against Plaintiff by deactivating Cadmus' access to the driver-app.

65.     Plaintiff was banned from his  Uber driver-app and not permitted to receive trip requests for seventy (70) days.

66.     Checkr's willful failure to maintain strict procedures was a direct and proximate cause of Cadmus' injuries.

67.     As a result of Checkr's dissemination of willful erroneous information about Cadmus' driver's license status to Uber, Cadmus was banned and/or blocked (1) from logging into his Uber driver-app; (2) from accepting ride-share requests; (3) from transport passengers for hire;  and ultimately (4) from generating income among other things.

## COUNT TWO
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP
### Against Checkr and Doe Defendants

68.    Paragraphs ¶¶ 1-55 inclusive are incorporated by reference and made a part of this count.

69.    A contractual agreement between Plaintiff and Uber Technology Services Agreement (i.e., the "Agreement") existed since July of 2016. See Exhibit "D".

70.    Checkr and Doe Defendants knew or should have known that Plaintiff was in a contractual agreement with Uber.

71.    Checkr and Doe Defendants intentionally and adversely interfered with Plaintiff's contractual relationship with Uber Technologies, Inc. by falsifying and then forwarding falsified driver status information about him to Uber full well knowing Cadmus was compliant and in good standing with  Maryland's driver's license requirements and was therefore authorized to drive a motor vehicle within the states of Maryland, Virginia and the District of Columbia.

72.    As a result, Plaintiff was banned from his driver-app and not permitted to receive trip requests for seventy (70) days.

73.    Checkr and Doe Defendants knew or should have known that Cadmus driver's license status was in good-standing at all related times herein.

74.    Checkr's and Doe Defendants' conduct was willful, wanton, reckless and done with such deliberate indifference for the truth and in spite of Cadmus' contractual agreement with Uber Technologies, Inc.

75.    Checkr's willful, wanton and reckless conduct induced Uber Technologies, Inc. to breach its Technology Agreement with Cadmus.

13

## COUNT THREE
## DEFAMATION
### *Against Checkr and Doe Defendants*

76.     Paragraphs ¶¶ 1-55 inclusive are incorporated by reference and made a part of this count.

77.     Checkr and Doe Defendants falsely published that Plaintiff's driver's license status was "surrendered" in a state where Plaintiff he was not domiciled and did not have a driver's license.

78.     It was not only false, but it was defamatory and libelous per se statements by publication inside Plaintiff's consumer report; stating: License Status: SURRENDER.

79.     Checkr sent the same to Uber on March 5, 2019.  Exhibit "A".

80.     Defendant Checkr and Doe Defendants defamatory statement and defamation per se publication was the direct and proximate cause of Plaintiff's injuries which included among other things loss of direct income associated with providing Uber ride-share services; and non-economic damages such as emotional and mental anguish exacerbation of hyper tension, high blood pressure, repeated migraine headaches, thoughts of hopelessness and financial dispair, sever anxiety and depression not knowing where or how Cadmus was going to financially survive or be able to support himself.    Aside from his migraine headaches, ringing in his ears, and seriously high and debilitating blood pressure, hypertension, night sweats as well as difficulty breathing,   Cadmus also suffered four anxiety attacks (believing he was choking and unable to breath) since March 6, 2019 as a result of being blocked from

14

Uber's driver-app based on the willful, reckless, erroneous and defamatory information per se provided by Checkr.

81.     Thus, Plaintiff incurred emotional, mental, physical, financial and other serious and severe injuries and pain and suffering including headaches, high severe blood pressure, nightmares, loss of sleep, exacerbated hyper tension and  acid reflux, financial despair and utter shocking desperation to meet his financial obligations.

**COUNT FOUR**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*Against Checkr and Doe Defendants*

82.     Paragraphs ¶¶ 1-55 inclusive are incorporated by reference and made a part of this count.

83.     Defendants published statements were made with reckless disregard and done with malicious intent.

84.     Defendants published statements were outrageous and extreme in that Cadmus previously went through the background investigation process in Nov.-Dec. of 2018 and was approved and providing rideshare services in the state of Maryland, DC and Virginia since December 31, 2018.  Checkr already had Cadmus' Maryland State Driver's License from the previous background investigation performed approximately 1.5 months prior.

85.     Plaintiff recently relocated to Baltimore, Md. and purchased a new home in December of 2018.

86.     Plaintiff relied substantially and solely on his ride-share income generated from the previous two (2.5) years to qualify for his new home mortgage.

87.     Plaintiff had no reason to suspect or believe Uber would be induced into breaching the Agreement and essentially deactivate Plaintiff's driver-app  two months after he purchased a new home and relocated to the City of Baltimore, Md.

88.     Plaintiff had no other source of financial income.

89.     Not knowing how his second mortgage payment would be made  (as a first-time home buyer purchase); as well, how Plaintiff would pay for his living expenses was shocking and egregious.  Plaintiff incurred serious and sever emotional distress that would shock the conscious of a reasonable and prudent man.

90.     Plaintiff has incurred migraine headaches, ringing in his ears, seriously high and debilitating blood pressure, hypertension, night sweats as well as difficulty breathing,  and has suffered four anxiety attacks (believing he was choking and unable to breath) since March 6, 2019.

91.     Plaintiff collapsed and fainted twice since Uber deactivated his Driver App.

92.     Plaintiff has been and continues to be in a state of panic and despair related to his loss of income since being blocked from the driver-app.

93.     Plaintiff also suffers from a debilitating physical condition dating back twenty (20) years for which he takes medication which materially affects his energy, stamina and ability to perform strenuous physical tasks creating a bar to finding alternative employment.

94.     In the alternative, Plaintiff makes a claim for NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS against Checkr and Doe Defendants.

### COUNT FIVE
### NEGLIGENT HIRE AND/OR SUPERVISION OR

16

## ALTERNATIVELY BREACH OF FIDUCIARY DUTY
### *Against Checkr*

95.     Paragraphs ¶¶ 1-55 inclusive are incorporated by reference and made a part of this count.

96.     At all times material to this Complaint, Checkr hired John and Jane Does 1 through 10 to act for its financial benefit and Doe Defendants were subject to the direction and control of Checkr.

97.     As such, Checkr owed Plaintiff and members of the public at large [a special duty] to compile, analyze, store and distribute accurate and factual background investigation information.

98.     At the time, Checkr hired Doe Defendants and throughout their employment, Checkr possessed a duty to ensure each conducted himself/herself in [a] lawful, compliant and prudent manner while engaging in gathering and disseminating of background investigation information.

99.     Those duties include, but are not limited to, Checkr's duty to make sure Doe Defendants had i.) the proper professional background, training and experience in conducting criminal and driver history background investigation and analysis; and ii.) provide adequate training, supervision  and seek those sufficiently experienced in software/database programming related to accurately generating, reporting, analyzing and verifying the background investigation data and information among other things; iii.) adequately hire and supervise individuals that could verify the "operative" state for which to retrieve driver's license information that comported with the driver's uploaded and current driver's license documents.

17

100.     On or about March 5, 2019, Checkr breached its general and special duties of care and conduct owed to Plaintiff by employing Doe Defendants, who were not properly trained, supervised or experienced in conducting criminal and driver's license status/history background investigations when Doe Defendants researched Virginia DMV records full with the knowledge that Cadmus' was actively licensed in the state of Maryland. (while purporting on a Consumer Report to Uber Technologies, Inc. that it was receiving Cadmus' actual and accurate background and driver investigation report) – while Checkr and Doe Defendants knew or should have known it was blatantly false.

101.     Checkr also breached its general and special duties of care and conduct owed to Plaintiff by not providing adequate supervision and oversight to ensure proper steps were being utilized to determine the veracity of the information researched, compiled, analyzed, stored and forwarded to the other and/or to Uber Technologies and the PSC.

102.     Checkr's breach of their special and general obligations to plaintiff is the direct and proximate cause of his injuries which he continues to sustain substantial and serious injuries and damages including but not limited to emotional, physical and financial pain and suffering.

### LIABILITY AND DAMAGES

103.     All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

104.     Defendant is liable for the acts committed by its agents, employees and representatives under the doctrine of respondaet superior because

Defendants' such persons were acting within the scope of their employment with Checkr.

105.     In the alternative, Defendant is liable for the conduct of its agents / employees and representatives under the theory of joint and several liability because Defendant and its agents/ employees were engaged in a joint venture and were acting jointly and in concert.

106.     Any mistake made by Defendants would have included a mistake of law.

107.     Any mistake made by Defendants would not have been a reasonable or bona fide mistake.

108.     Plaintiff believes and avers Defendant's conduct was willful for reasons including but not limited to affirmative and prior knowledge of Plaintiff's driver's license status previously vetted and reported on by Checkr a month or so prior.

109.     Plaintiff suffered and continues to suffer from serious and sever agony, frustration, aggravation, embarrassment, hopeless despair and serious and sever emotional distress as a result of the acts and omissions described in this Complaint.

110.     For purposes of a default judgment, Plaintiff believes and avers that such agony, frustration, aggravation and embarrassment has a value of no less than ONE HUNDRED FORTY THOUSAND ($100,000.00) DOLLARS.

### OTHER RELIEF

19

111.     All previous paragraphs inclusive are incorporated by reference and made a part of this complaint.

112.     Plaintiff requests a jury trial in this matter.

113.     Plaintiff seeks reasonable attorney's fees and costs.

114.     Plaintiff seeks such other relief as this Honorable Court may deem just and proper.

115.     Plaintiff reserves to amend as a matter of course and to add additional party-defendants; and state law/constitutional claims against Checkr and Doe Defendants among potential others.

WHEREFORE, Plaintiff demands judgment against Checkr, Inc. and Doe Defendants, jointly and severally, in the amount of  TWO HUNDRED FIFTY THOUSAND ($250,000.00) DOLLARS for actual and non-economic injuries and, jointly and severally,  TWO-HUNDRED FIFTY THOUSAND ($250,000.00) for punitive damages and any other and further relief this court deems proper and just.

RICHARD R. CADMUS JR.

By: _____
            *Pro Se*

Richard R. Cadmus Jr.
1258 James Street
Baltimore, MD 21223
(540)395-3539
randcadmus@gmail.com
*Pro se Plaintiff*

20